[Civ. No. 4466.   First Appellate District, Division One.—October 17, 1923.]

## MILOS GOPCEVIC, Respondent, v. CALIFORNIA PACK-ING CORPORATION, Appellant.

[1] SALES—TITLE—INTENTION.—As a general rule, the question of when title to goods sold passes from a seller to the buyer is one of intention between the parties; and in the absence of a showing to the contrary the contract of the parties is controlling upon the subject.

[2] ID.—TENDER—TITLE—DELIVERY.—Every tender does not transfer title; and where the contract provides that payment is to be made upon delivery, the tender implies that the fulfillment of this concurrent condition must be complied with before title will pass from the seller to the buyer.

[3] ID.—TITLE—INTENTION—HOW ASCERTAINED.—The question of the passing of title being one of intention, in the ascertainment of this intention resort must be had to the terms of the contract, the conduct of the parties, and the circumstances of the case.

[4] ID. — REFUSAL OF BUYER TO ACCEPT PRUNES — NONPASSAGE OF TITLE — MEASURE OF DAMAGES — SECTION 3310, CIVIL CODE. — The contract price for an undelivered portion of a crop of prunes which the buyer refused to accept is not recoverable by the seller under section 3310 of the Civil Code, where by the terms of the contract title to the prunes is to pass to the buyer upon completion of weighing and payment, and no showing is made of any intent on the part of the seller to transfer his title in the prunes to the buyer.

[5] ID.—REMEDIES OF SELLER—TITLE—TENDER.—If the seller transfers to the buyer the title to the property sold, he may, under section 3310 of the Civil Code, recover the full purchase price. If, on the other hand, he retains title to the goods he is confined in his remedy to section 3311 of the Civil Code, under which he is entitled to recover the difference between the contract price and the market value at the time of performance, or, if he sell the goods as in the case of a pledge, he will be entitled to recover the difference between the price thus realized and that stipulated in the contract. If tender is made by the vendor with intent to pass title in the goods to the vendee, title is thereby deemed to have passed, and the vendor may sue for the contract price, but if tender is made without intent to pass title until payment is made, title is not deemed to have passed, and the situation is controlled by section 3311 of the Civil Code.

[6] Id.—Title — Intention — Expression "Free on Board."—While the expression "free on board" has a general meaning, it is not conclusive upon the question of intention to pass title.

[7] Id.—Refusal of Buyer to Accept Prunes—Action for Damages —Payment by Buyer—Right to Credit.—In an action by a seller to recover damages for the breach of the buyer to accept an undelivered portion of a crop of prunes, where under the express terms of the contract the defendant was entitled to have a sum paid by it when the contract was entered into applied on account of the purchase price as deliveries were had and payments became due thereon, the fact that defendant did not fully perform its contract did not deprive it of the right it had exercised to apply such sum to the first deliveries, and it was entitled to a credit in such sum.

APPEAL from a judgment of the Superior Court of Lake County. M. S. Sayre, Judge. Reversed.

The facts are stated in the opinion of the court.

C. M. Crawford, Pillsbury, Madison & Sutro and Marshall P. Madison for Appellant.

Moran & Heer, Benjamin C. Jones and Nathan Moran for Respondent.

TYLER, P. J.—Action to recover damages for breach of contract.

The controversy presents an ordinary agreement to buy and sell.

The main contention presented by the appeal is whether or not title to the goods sold had passed to the defendant.

The complaint alleges that on June 18, 1920, plaintiff and defendant entered into a written contract whereby plaintiff agreed to sell and the defendant agreed to purchase the entire crop of prunes grown by plaintiff on his orchard situated in Lake County. The contract in substance provided that the seller was to harvest and properly dry and cure the crop, which was of the season of 1920, and deliver the same to defendant as drying was completed and the crop

6. Effect of delivery of goods f. o. b. upon the passing of title, notes, 62 L. R. A. 802; 33 L. R. A. (N. S.) 54.

What amounts to delivery f. o. b., note, 16 A. L. R. 597.

ready for shipment. The agreed price was $262.50 per ton orchard run, provided, however, that the purchaser was not bound to accept delivery of the crop unless the same was in sound and merchantable condition as originally dried without the addition of water and other foreign substances. The seller was required to give notice by mail to the buyer of not less than three days at its place of business in San Francisco when the crop was ready for delivery. For the purpose of determining the quality and weight of the fruit the buyer had the right to place an agent or inspector at the seller's dryhouse to be present when weighing was going on, and it was agreed by the parties that, unless objection was made by the purchaser to the merchantability of the prunes at the time of the weighing or sacking, all objections as to weight and quality were to be waived. The buyer agreed to promptly upon notice and according to custom furnish and deliver on seller's premises all necessary sacks for the crop. By the express terms of the contract title to the prunes was to pass to the buyer upon *completion of weighing and payment,* and thereafter the crop was to be at buyer's risk. As a part of the consideration of the contract the buyer was required to and did pay the sum of $3,000, which sum it was agreed should be credited against the purchase price as payments became due thereon, provided the buyer fully performed all of the terms and conditions of the contract on its part to be performed.

It is further alleged that plaintiff properly dried and cured the prunes so that the same were ready for shipment; that the total weight of the crop was in excess of 105 tons, and that a portion thereof, amounting to some 51 tons, was delivered to and accepted by defendant; that on or about the tenth day of December plaintiff notified defendant that the undelivered portion, amounting to 54 tons, was ready for delivery, and he offered to deliver the same in accordance with the terms of the contract, but defendant refused to accept the same. Plaintiff then alleged that defendant had paid on account of the purchase price the sum of $8,500, and that there was still due and owing from the defendant the further sum of $19,226.83, for which sum judgment was prayed.

To this complaint defendant filed a demurrer on the grounds that plaintiff did not show any damage, for the

reason that it did not appear therefrom what plaintiff had done with the undelivered 54 tons still in his possession, nor did it appear that they were worth less than the contract price. The demurrer therefore presented the question that inasmuch as it appeared from the complaint that title to the undelivered prunes had not passed to the defendant, plaintiff was not entitled to recover the contract price as damages, but was only entitled to recover the difference between the contract price and the market price of the undelivered portion of the crop. The demurrer was overruled.

Defendant company, answering, denied that the quality of any portion of the prunes was up to the contract requirements, it being averred that even the portion of the crop that had been delivered was under-cured, and that the undelivered portion which it had declined to accept was not only under-cured but was also moldy and skin-damaged by rain. It also alleged that in addition to the payment of the sum of $8,500 it had paid the further sum of $3,000; under the terms of the contract.

Thereafter the case came on for trial. A jury was had and by stipulation the question of the quality of the undelivered portion of the prunes was submitted to it as a special issue, the court to decide the other issues. Trial was had, and it appeared in evidence that as the crop gradually ripened one portion and then another was harvested, treated, and delivered to defendant; that prior to December 10, 1920, plaintiff had delivered to defendant about 51 tons of the prunes, which at the contract price amounted to the sum of $13,420, and plaintiff had received from defendant payments thereon amounting in the aggregate to the sum of $11,500, which sum included the $3,000 above mentioned. On December 10, 1920, plaintiff demanded that defendant accept and pay for the rest of the crop, amounting to about 54 tons. Defendant claimed that the prunes had been rained on while drying and that they had been damaged. Plaintiff insisted that they were sound and merchantable in every way and demanded that defendant take them. Defendant had the prunes examined, and upon the report of its agents refused to accept the undelivered portion as above mentioned. Efforts were thereupon made by the defendant to have the question determined by experts. Plaintiff refused to accede to this proposal, and made a final and, as he

claims, an unconditional offer to deliver the balance of the crop under the terms of the contract in sacks f. o. b. defendant's trucks at plaintiff's dryhouse. Defendant refused to accept the prunes and suit followed.

The complaint, as above indicated, contained no allegation that title to the crop had passed from the seller to the buyer. The evidence upon this subject consists of correspondence between the parties and the fact that plaintiff had not insisted upon a strict compliance with the terms of the contract with reference to payments for the delivered portions of the crop. The record shows that plaintiff advised defendant as follows: ''I have fully complied with my part of the contract and expect you to do likewise as regards your obligations thereunder without further controversy or equivocation.'' Again on January 2, 1921, he wrote defendant: ''The entire crop is absolutely sound and merchantable, and the decision is up to you whether you want to live up to the contract which you made with me or deliberately break it.'' And again a week later he states in a letter to the defendant: ''The proposal contained in the last paragraph of your letter of January 2 I decline, preferring rather to stand upon the letter of the contract.'' Finally he advised defendant, ''The weighing and sacking of my prune crop has been completed, and there now remains for delivery to you under the terms of your contract 996 sacks thereof or a total weight of 54½ tons.'' With reference to the payments of the delivered portion of the crop it appears that a balance became due under the provisions of the contract which was not paid.

Upon the conclusion of the trial and with the evidence as above narrated before it the jury found in favor of the plaintiff upon the special issue. The court approved and adopted this verdict, and upon the issues presented to it found upon the question of tender that plaintiff had before the commencement of the action tendered and offered to deliver to defendant f. o. b. defendant's trucks at plaintiff's dryhouse the undelivered portion of the crop, which it further found was sound and merchantable; that notwithstanding such tender and offer to deliver defendant refused to accept the same; that defendant had paid on account of said crop the sum of $8,500 and no more, and that the sum of $3,000 deposited at the time of the entering into of the

contract was forfeited by defendant for not having accepted the undelivered portion of the prunes. Judgment was accordingly rendered for the sum of $19,226.83. The judgment made no disposition of the 54 tons of undelivered prunes, and, so far as the record shows, they are still in plaintiff's possession.

Defendant thereupon moved for a new trial. The motion was denied, and this appeal is from the denial of the motion and from the judgment.

Appellant relies for a reversal upon several grounds. It is first claimed that the demurrer interposed to the complaint should have been sustained, and that the court erred in giving plaintiff as damages the contract price instead of the excess, if any, of the amount due from defendant on the contract price over the value of the undelivered prunes.

These contentions will be considered together as they both involve the controlling question in the case, namely, whether or not the court adopted the proper measure of damages in ascertaining the amount of damages to which plaintiff was entitled.

[1] As a general rule, it may be stated that the question of when title to goods sold passes from a seller to the buyer is one of intention between the parties (*Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212 [9 Am. St. Rep. 199, 18 Pac. 248]). In the absence of a showing to the contrary the contract of the parties is controlling upon the subject. Here the contract specifically provided that title was to pass upon completion of the weighing and payment of the purchase price, the crop thereafter to be at the buyer's risk. Under the terms of the contract, therefore, two things were necessary to be done before title to the prunes passed to defendant; and unless it can be said that the evidence shows a waiver of these conditions the contract is of course controlling.

It is conceded that plaintiff tendered the undelivered portion of the crop in fulfillment of his contract, and upon this subject there is no dispute. [2] Every tender, however, does not transfer title; and where, as here, the contract provides that payment is to be made upon delivery, the tender implies that the fulfillment of this concurrent condition must be complied with before title will pass from the seller to the buyer (*Hewes* v. *Germain Fruit Co.*, 106 Cal. 441 [39

Pac. 853] ; *Katzenbach* v. *Breslauer,* 51 Cal. App. 756 [197 Pac. 967] ; *Wong Foo* v. *Southern Pacific Co.,* 41 Cal. App. 42 [181 Pac. 823]). Title is transferred by an executory agreement of sale only when the seller has prepared it for delivery and offered it to the buyer with intent to transfer title (Civ. Code, sec. 1141). By section 1502 of the same code it is provided that the title to a thing offered in performance of an obligation passes to the creditor if the debtor at the time signifies his intention to that effect. Here it is not alleged that the title passed, and there is nothing in the evidence to show any intent on the part of the seller to transfer his title in the prunes to the buyer.

[3] The question of the passing of title being one of intention of the parties, in the ascertainment of this intention resort must be had to the terms of the contract, the conduct of the parties and the circumstances of the case. The intention being the governing principle, the question in the main is one of fact. Here the correspondence between the parties shows conclusively that the seller intended to stand upon the letter of his contract. The only other circumstance from which an intention to relinquish title might be presumed is the fact that when deliveries were first made plaintiff did not insist upon full contemporaneous payments. This no doubt was due to the fact that a deposit had been made by the buyer which was to be applied in payment of deliveries. If the goods were delivered in the expectation that the price would immediately be paid the refusal to make payment would be such a failure on the part of the buyer to perform the contract as would entitle the seller to reclaim the goods. Whether or not this act constituted a waiver is not determined from the mere fact of delivery alone, but is itself again a question of fact. Had there been no intent to transfer title the seller could have recovered the goods, at least in the hands of the buyer, by an appropriate action. However, this fact becomes unimportant, for such of the goods as were delivered were used by defendant, and it clearly cannot be said that the question in any manner controls or affects the undelivered portion amounting to 54 tons, and especially so after a dispute had arisen between the parties and when plaintiff had informed defendant that he intended to stand on the strict letter of his contract. Here there is neither allegation nor proof of a waiver. The court did

not attempt to find that title had passed, and there is no evidence upon which such a finding could be predicated.

[4]  Under this condition of the record the trial court committed error in applying the measure of damages as set forth in section 3310 of the Civil Code.  That section applies only where the title to the goods sold has passed from the seller to the buyer.  Where title to property contracted for has not passed the vendor upon a breach can have no cause of action upon the contract for the purchase price, his remedy in such case being controlled by section 3311 of the same code, which establishes the measure of damages where title to goods sold remains in the seller.  The latter section further provides that in the event that property the subject of sale is not disposed of by the vendor in accordance with section 3049 of the same code, the damages shall be the excess, if any, of the amount due from the buyer, under the contract over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to the market over those which would have been incurred for the carriage thereof if the buyer had accepted it.  The vendor may or may not sell the goods, the advantage of complying with the privilege given him being that in such case the price obtained is conclusive evidence of their value (*Hewes* v. *Germain Fruit Co., supra; Katzenbach* v. *Breslauer Co., supra*).

There are certain expressions in some opinions that have caused great confusion and lack of harmony in the decisions upon this subject, which confusion is due largely to a conflict in the laws of different jurisdictions.  The result of the cases, however, in this state in construing our statutes upon the subject as an exposition of the law of sales is unmistakable as to the practical construction to be given questions of this character.  They are to the effect that the measure of damages for the breach of an agreement to buy and sell is controlled by sections 3310 and 3311 of the Civil Code.  [5]  If the seller transfers to the buyer the title to the property sold, he may under section 3310 recover the full purchase price.  If, on the other hand, he retains title to the goods he is confined in his remedy to section 3311, under which he is entitled to recover the difference between the contract price and the market value at the time of performance, or, if he sell the goods as in the case of a pledge, he

will be entitled to recover the difference between the price thus realized and that stipulated in the contract. If tender is made by the vendor *with intent to pass title* in the goods to the vendee, title is thereby deemed to have passed, and the vendor may sue for the contract price (Civ. Code, sec. 1141). If tender is made without intent to pass title until payment is made, title is not deemed to have passed, and the situation is controlled by section 3311. This being true, it is obvious from what we have said that plaintiff has mistaken his remedy.

Appellant has cited us to the cases of *Phillips* v. *Stark,* 186 Cal. 369 [199 Pac. 509], and *Levy* v. *Kahn,* 59 Cal. App. 119 [210 Pac. 40], in support of his further claim that defendant, having notified plaintiff before any tender was made that he would not accept the prunes, he should have offset against the value of the goods, and sued for the difference as provided for in section 3311 of the code. A consideration of this contention is unnecessary. In both those cases the property the subject of the action had passed and had been resold, and of course under those circumstances the vendors were held not to be entitled to both the full purchase price and the property. No such question is here involved.

It is urged by respondent that the tender "f. o. b." signified an intention to pass title. [6] While the expression "free on board" has a general meaning, it is not conclusive upon this question (*Gianelli* v. *Globe Milling Co.,* 48 Cal. App. 103 [191 Pac. 720]). The offer was made to conform to the express provisions in the contract, but it still presents a question of fact as to the intention of the parties to pass title, and the subject is controlled by the same principles above expressed.

To the suggestion that the real reason for the rejection of the prunes was the depression in the market conditions, it is only necessary to say that the trial court found upon conflicting evidence that defendant had breached its contract, but this fact did not justify the application by the court of the wrong measure of damage. The law afforded a complete remedy if properly pursued.

[7] And, finally, appellant complains of the finding of the trial court to the effect that defendant was not entitled

to a credit of the sum of $3,000 paid by it when the contract was entered into.

Under the express terms of the contract defendant was entitled to have this sum applied on account of the purchase price as deliveries were had and payments became due thereon; and the fact that it did not fully perform its contract did not deprive it of the right it had exercised to apply this payment to the first deliveries. This payment was a benefit accruing to plaintiff under the contract, and should be given effect as such, for the plaintiff can recover no greater amount in damages for a breach of the obligation than he could have gained by full performance thereof (sec. 3358, Civ. Code).

Other questions raised by the appellant are unimportant, considering our conclusion. For the reasons given the judgment is reversed.

Richards, J., and St. Sure, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 13, 1923.

All the Justices concurred.