[Civil No. 3455. Filed January 28, 1935.]

[40 Pac. (2d) 749.]

MARTHA R. WHITE, Appellant, v. NELLIE C. CLIFFORD and JOHN Q. CLIFFORD, Wife and Husband, Appellees.

Mr. Francis C. Wilson, Mr. Henderson Stockton, Mr. Emmet M. Barry and Mr. Eli Gorodezky, for Appellant.

Mr. D. V. Mulhern and Mr. B. H. Gibbs, for Appellees.

LOCKWOOD, C. J.—This is an action by Nellie C. Clifford, hereinafter called plaintiff, and John Q. Clifford, her husband, to recover from Martha R. White, hereinafter called defendant, the purchase price of certain property, which the Cliffords allege they agreed to sell and defendant agreed to buy. Defendant filed a general and a special demurrer, the latter being that the complaint did not show that the General Land Office had accepted a certain deed set up in the complaint as a transfer of the property involved, and answered with a general denial. The demurrers were overruled, and the case was tried to the court on the merits. Judgment was rendered in favor of the Cliffords for the purchase price as sued for, and after the usual motion for new trial, etc., had been overruled, this appeal was taken.

There are thirty-four assignments of error grouped by defendant under seven propositions of law, as required by the rules of court, but, after a careful examination of the record, we think the appeal may be best disposed of by a general discussion of the legal questions so raised, rather than by considering each proposition or assignment separately. In order to do this, we must first state the material facts, taken as strongly in favor of the Cliffords as the evidence will justify. We do this in narrative form, as follows:

In February or March, 1932, plaintiff, Nellie Clifford was the owner of desert land entry No. 060553, hereinafter called the entry, which, while a valid and existing desert land entry, had not been perfected so as to entitle her to patent, and the time allowed under the law to perform the acts necessary to secure a patent was approaching expiration.

Defendant was a wealthy woman whose legal residence was and had been in the state of New York, though she was in the habit of spending part of her time in New Mexico, and occasionally visited Arizona, but was never a resident of the latter state. She and one R. C. Woodruff were jointly interested in a stock farm located near plaintiff's entry. For reasons which it is not necessary to discuss, she decided that she would like to secure the land covered by the Clifford entry if it could be obtained on suitable terms, and verbally authorized Woodruff to enter into negotiations for such purchase with the owner, who was then unknown to her. Woodruff at the time was in New Mexico, and communicated with Captain James M. Palmer in Phoenix, asking him to get in touch with the owners of the land and find out on what terms they would dispose of it. After a number of telegrams, letters and telephonic conversations between defendant, Woodruff, Palmer, and the Clif-

fords, the general effect of which were known by both plaintiff and defendant, the latter verbally authorized the closing of the deal, and on March 26th signed and swore to an application for a desert land entry covering the land embraced in plaintiff's entry, in the form required by the government for such entries, in which she stated that she was a resident of Coolidge, Arizona. This last statement was not a fact, but was made by her in good faith, because she had been informed and believed that her ownership of land in Arizona qualified her to make it. Plaintiff also was informed and believed that defendant had the necessary residence to take title under the Desert Land Act (43 U. S. C. A., §§ 321–323). Apparently at that time it was the intention of the parties to make the transfer by means of a relinquishment by plaintiff and a new entry by defendant, but this idea was obviously abandoned in favor of handling the deal by an assignment of plaintiff's entry to defendant, for this instrument was never used by defendant in an attempt to make entry on the land in question, and on April 14th a certain written escrow agreement was executed by Palmer, signing as agent for defendant, and was accepted by plaintiff Nellie Clifford, through her attorney, which clearly provides for transfer by assignment. This escrow reads as follows:

"Escrow Instructions. Escrow No. 22767.
"JJB Order No. ———.
"Phoenix, Arizona, April 14, 1932.
"Phoenix Title and Trust Company:
"I hand you herewith the sum of $500.00, and will hand you the further sum of $7500.00 on or before the expiration of 30 days from the date of the deposit with you of the quit-claim deed hereinafter provided for, all of which sum of $8000.00 you may pay to the order of Nellie C. Clifford, upon the compliance with the following:

"At such time as you have a quit-claim deed executed by Nellie C. Clifford and conveying Martha R. White the W½ of Section 28, Tp. 5 S., Range 7 E., of the G. & S. R. B. & M., in Pinal County, Arizona;

"An extension from the United States General Land Office to Nellie C. Clifford extending the time for 3 years within which time final proof may be filed on Desert-Land Entry No. 060553 'F' M. D. H.;

"And at such time as the U. S. General Land Office accepts the above described quit-claim deed as a complete transfer from Nellie C. Clifford to Martha R. White of Desert-Land Entry No. 060553 'F' MDH.

"Your charge in connection herewith shall be paid in full by Nellie C. Clifford.

"MARTHA R. WHITE.
"By JAMES M. PALMER, Her Agent.

"Apr. 14, 1932. I hand you herewith the quit-claim deed mentioned above, and agree to the above instructions.

"NELLIE C. CLIFFORD.
"By D. V. MULHERN, Her Attorney."

The $500 was placed in escrow by Palmer, and the quitclaim deed by Nellie Clifford and extension of time to make proof were also so deposited, but the General Land Office never accepted the deed as a transfer of title, nor was possession of the land given to defendant. Shortly thereafter, defendant notified Woodruff that on account of her financial situation it was necessary to cancel the whole deal. This information was communicated to Palmer and by him to plaintiff, and shortly thereafter Palmer returned to Woodruff all papers which he had, and, so far as defendant was concerned, nothing more was ever done by her in furtherance of the matter. Thereafter this suit was brought.

The first question we consider is whether the contract of purchase is within subdivision 6 of section 1521, Revised Code of 1928, requiring certain instruments to be in writing, which reads as follows:

"6. Upon an agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged."

If it is, plaintiff cannot recover, for there is not a scintilla of evidence connecting defendant with the transaction, except testimony of various oral communications between her and Woodruff. Plaintiff admits if the agreement is "for the sale of real property, or of an interest therein" the suit must fail, but contends strenuously that the transaction involves a sale of personal property only. We think it unnecessary to decide this question, for there is another matter appearing on the face of the record which makes it immaterial as to whether the sale was of real or personal property. Assuming, for the purposes of the argument, that the statute of frauds does not apply and that there is no question of the authority of Woodruff and Palmer to bind defendant, what are the real terms of the contract, and to what did the respective parties obligate themselves? The escrow contains the terms as finally agreed on. Defendant promised to pay to plaintiff $8,000 if, as, and when three things occurred (a) when plaintiff executed and delivered to the escrow holder a quitclaim deed to the entry in favor of defendant; (b) when the General Land Office granted an extension of three years' time to make final proof on the entry; and (c) when the latter accepted the deed above referred to as a complete transfer of plaintiff's entry to defendant.

Conditions (a) and (b) were fulfilled, but condition (c) was not. It is admittedly the law that only a *bona fide* resident of Arizona can make a desert land entry therein. It is also true that only a person qualified to make an original entry can take one already made, by an assignment from the original en-

tryman, and that, if one to whom an assignment is made is not qualified to acquire title under the Desert Land Act (43 U. S. C. A., §§ 321–323), the title remains in the assignor.

It appears from the uncontradicted evidence herein that defendant was not, at any time from the inception of the deal to the time of trial, qualified to acquire title to the entry under the assignment, for the reason that during all these times she was a resident of either New Mexico or New York and was never at any time a resident of Arizona, but that both parties at the time the contract was made knew the law requiring residence and believed that defendant could qualify thereunder.

. The situation may be thus stated in the abstract: A gives B an option of purchase of certain property, which option cannot be assigned or transferred by B except with the approval of A, which approval the latter has stated he will give if fact Y exists. C agrees to buy the option from B at a fixed price which is to be paid only after A approves the transfer. Both B and C know that, in order to secure the approval, fact Y must exist and both believe it does exist. After the contract is made and B has done all in his power to secure A's approval, it is discovered fact Y does not exist. C refuses to pay the purchase price. May B recover it under the circumstances?

■ The present action is one to recover the purchase price, and the case was tried and the judgment rendered on that theory, and not on the theory that it was an action for damages. It is the general rule that an action for the purchase price can be maintained only when title to the property has passed to the buyer, or possession has been given him. *Purexo Products Co.* v. *Yamate,* 98 Cal. App. 65, 276 Pac. 597; *Rosenberg Bros. & Co.* v. *F. S. Buffum Co.,* 234 N. Y. 338, 137 N. E. 609. And conversely it cannot be

maintained when the title has not passed or possession been given. *Gopcevic* v. *California Packing Corp.,* 64 Cal. App. 132, 220 Pac. 1078; *Zimmerman* v. *Roessler & Hasslacher Chemical Co.,* 240 N. Y. 501, 148 N. E. 659. And certainly if this is true when the title merely has not passed, much more will be true where it cannot pass, without the doing of some further act, whose performance equity cannot and will not compel. In order that condition (c) may be fulfilled, there must be a showing to the General Land Office that defendant is a *bona fide* resident of Arizona. This showing cannot be made without a change of residence on the part of defendant, and it is repugnant to every known principle of law or equity to hold that a party can be compelled to change his residence merely to aid in the performance of a contract.

█ There are some few exceptions to the rule that an action for the purchase price will not lie till title or possession has passed, but we know of none within which the present case will fall.

Since the title to the entry never has passed to defendant and since such passage was expressly made a condition precedent to the payment of the purchase price, plaintiff may not recover it, and the court erred in rendering judgment therefor.

██ Whether a suit could have been sustained on the theory that defendant had fraudulently represented to plaintiff that she could take title, and that since she cannot she has therefore breached her contract, and is responsible in damages therefor, we need not now decide. The two actions are inconsistent remedies; the present one being based on an affirmance of the contract, and the suggested one on the acceptance of a breach thereof. *Westfall* v. *Peacock,* 63 Barb. (N. Y.) 209. And where, as in the present action, the pleadings and evidence support only the one theory, the parties must stand or fall, in such

action at least, on that theory. It is suggested that the defense we have passed on is not presented by the pleadings, the evidence, or the assignments of error. The special demurrer clearly raises the issue of whether it was necessary to allege and prove that the General Land Office had accepted the quitclaim deed as a transfer. We have shown that such acceptance was necessary to pass the title, so as to enable plaintiff to sue for the purchase price. It was therefore error to overrule the demurrer, and the case must necessarily be reversed on the second assignment of error. But it would be a waste of the time and money of both parties to allow plaintiff to make an amendment which the evidence shows cannot be sustained.

The judgment of the superior court is reversed and the case remanded, with instructions to sustain the special demurrer and for such further proceedings as may be properly taken under the views expressed herein.

McALISTER and ROSS, JJ., concur.