[Civil No. 3986. Filed October 23, 1939.]

[94 Pac. (2d) 875.]

NELLIE C. CLIFFORD and JOHN Q. CLIFFORD, Wife and Husband, Appellants, v. MARTHA R. WHITE, Appellee.

Mr. D. V. Mulhern, Mr. B. H. Gibbs and Fennemore, Craig, Allen & Bledsoe, for Appellants.

Mr. Henderson Stockton and Mr. Eli Gorodesky and Messrs. Wilson & Watson, of Santa Fe, New Mexico, for Appellee.

McALISTER, J.—This is an action by Nellie C. Clifford and John Q. Clifford to recover from Martha R. White damages for an alleged breach of a contract

by which, they aver, they agreed to sell and she to purchase certain property located in Pinal county, Arizona, for a consideration of $8,000. Judgment in favor of the defendant was rendered after a demurrer to the amended complaint (hereafter referred to as the complaint) had been sustained upon the ground that it did not state a cause of action and the right to amend denied because the defect could not in the opinion of the trial court be cured. Thereupon the plaintiffs brought the matter here for review.

In this situation the correctness of the judgment necessarily depends on whether the ruling upholding the demurrer was proper, and to determine this the facts set up in the complaint must appear. That pleading alleges in substance that on April 14, 1932, at Phoenix, Arizona, the plaintiffs, Nellie C. Clifford and John Q. Clifford, wife and husband, entered into an agreement in writing with the defendant, Martha R. White, whereby the plaintiffs agreed to sell and the defendant to buy for a consideration of $8,000 United States desert land entry, Phoenix, Arizona, serial No. 060553, made and held by plaintiff, Nellie C. Clifford, covering all of the W½ of Section 28, Tp. 5 S., Range 7 E., G. & S. R. B. & M., located in Pinal county, Arizona; that by the further terms of the contract the parties agreed as follows: that the defendant would deposit that day $500 of the purchase price with the Phoenix Title & Trust Company, a corporation, transacting business in Phoenix, Arizona; that the plaintiffs would deposit with the same company a quitclaim deed executed by the plaintiff, Nellie C. Clifford, conveying to the defendant the desert land entry, and also obtain from the United States General Land Office a three-year extension of time in which final proof might be made upon the desert land entry; that the defendant would deposit with the Phoenix Title & Trust Company the balance of the purchase price,

$7,500, on or before the expiration of thirty days from the time the quitclaim deed should be deposited by plaintiffs with the Phoenix Title & Trust Company; that the $8,000 should be paid by the Phoenix Title & Trust Company to the order of Nellie C. Clifford upon the acceptance by the United States General Land Office of the quitclaim deed as a complete transfer of the desert land entry to Martha R. White.

It is alleged further that pursuant to this agreement, Martha R. White deposited $500 with the Phoenix Title & Trust Company on April 14, 1932, and that the plaintiffs on the same day deposited with that company the quitclaim deed from Nellie C. Clifford to Martha R. White, and also obtained from the United States General Land Office an extension for three years of the time in which final proof on the entry could be submitted; that the quitclaim deed has at all times since April 14, 1932, been in the possession of the Phoenix Title & Trust Company to be by it delivered to Martha R. White upon the deposit by her with that company of the balance of the purchase price.

Plaintiffs aver further that they have done everything they agreed to do to complete the agreement and sale, but that the defendant, Martha R. White, has wholly failed, neglected and refused to deposit the remainder of the purchase price, $7,500, or any part thereof, with the Phoenix Title & Trust Company, though thirty days from April 14, 1932, has long since gone by, and that her failure in this respect prevented the acceptance by the United States General Land Office of the quitclaim deed as a complete transfer of title from Nellie C. Clifford to Martha R. White of the desert land entry, serial No. 060553, and made it impossible to consummate the sale thereof in accordance with the terms of her agreement; that instead of living up to her contract to purchase, the defendant expressly repudiated it on or about July 1, 1932.

The last paragraph sets up the different items of damage alleged to have been suffered by plaintiffs as a result of the defendant's refusal to perform her agreement.

To this complaint the defendant filed a demurrer, a plea in bar and an answer. The demurrer is based upon twelve grounds, the first being general and each of the other eleven special. The general demurrer was sustained, so a consideration of any of the grounds urged in the special demurrer becomes unnecessary.

The plea in bar was based upon the judgment of this court in cause No. 3455, *White* v. *Clifford,* 45 Ariz. 120, 40 Pac. (2d) 749, rendered in January, 1935, in disposing of the appeal in case No. 37610 of the superior court of Maricopa county, an action instituted in July, 1932, by the plaintiffs in this proceeding, Nellie C. Clifford and her husband, John Q. Clifford, against the same defendant, Martha R. White, to recover the purchase price of desert land entry No. 060553. The court did not, however, consider this plea in bar but in ruling on the demurrer did what for practical purposes amounted to the same thing, namely, took judicial notice of the proceedings in the former action and weighed the allegations of the complaint not merely in their own light but as they were affected by the record and holding in that case. In testing the sufficiency of the complaint that way the court relied on *Stewart* v. *Phoenix National Bank,* 49 Ariz. 34, 64 Pac. (2d) 101, but whether, after taking this action, it reached the correct conclusion cannot be determined without knowledge of the facts judicially noticed and of the construction placed upon them by this court. The former opinion states the facts in the following language [45 Ariz. 120, 40 Pac. (2d) 750]:

"In February or March, 1932, plaintiff, Nellie Clifford was the owner of desert land entry No. 060553,

hereinafter called the entry, which, while a valid and existing desert land entry, had not been perfected so as to entitle her to patent, and the time allowed under the law to perform the acts necessary to secure a patent was approaching expiration.

"Defendant was a wealthy woman whose legal residence was and had been in the state of New York, though she was in the habit of spending part of her time in New Mexico, and occasionally visited Arizona, but was never a resident of the latter state. She and one R. C. Woodruff were jointly interested in a stock farm located near plaintiff's entry. For reasons which it is not necessary to discuss, she decided that she would like to secure the land covered by the Clifford entry if it could be obtained on suitable terms, and verbally authorized Woodruff to enter into negotiations for such purchase with the owner, who was then unknown to her. Woodruff at the time was in New Mexico, and communicated with Captain James M. Palmer in Phoenix, asking him to get in touch with the owners of the land and find out on what terms they would dispose of it. After a number of telegrams, letters, and telephonic conversations between defendant, Woodruff, Palmer and the Cliffords, the general effect of which were known by both plaintiff and defendant, the latter verbally authorized the closing of the deal, and on March 26th signed and swore to an application for a desert land entry covering the land embraced in plaintiff's entry, in the form required by the government for such entries, in which she stated that she was a resident of Coolidge, Arizona. This last statement was not a fact, but was made by her in good faith, because she had been informed and believed that her ownership of land in Arizona qualified her to make it. Plaintiff also was informed and believed that defendant had the necessary residence to take title under the Desert Land Act (43 U. S. C. A., §§ 321–323). Apparently at that time it was the intention of the parties to make the transfer by means of a relinquishment by plaintiff and a new entry by defendant, but this idea was obviously abandoned in favor of handling the deal by an assignment of plaintiff's entry to defendant, for this instrument was never used by defendant in an attempt to make entry on the

land in question, and on April 14th a certain written escrow agreement was executed by Palmer, signing as agent for defendant, and was accepted by plaintiff Nellie Clifford, through her attorney, which clearly provides for transfer by assignment. This escrow reads as follows:

"'Escrow Instructions. Escrow No. 22767.

"'JJB Order No. ——.

"'Phoenix, Arizona, April 14, 1932.

"'Phoenix Title and Trust Company:

"'I hand you herewith the sum of $500.00, and will hand you the further sum of $7500.00 on or before the expiration of 30 days from the date of the deposit with you of the quit-claim deed hereinafter provided for, all of which sum of $8,000.00 you may pay to the order of Nellie C. Clifford, upon the compliance with the following:

"'At such time as you have a quit-claim deed executed by Nellie C. Clifford and conveying Martha R. White the W½ of Section 28, Tp. 5 S., Range 7 E, of the G. & S. R. B. & M., in Pinal County, Arizona;

"'An extension from the United States General Land Office to Nellie C. Clifford extending the time for 3 years within which time final proof may be filed on Desert-Land Entry No. 060553 "F" M. D. H.;

"'And at such time as the U. S. General Land Office accepts the above described quit-claim deed as a complete transfer from Nellie C. Clifford to Martha R. White of Desert-Land Entry No. 060553 "F" MDH.

"'Your charge in connection herewith shall be paid in full by Nellie C. Clifford.

"'MARTHA R. WHITE

"'By JAMES M. PALMER, Her Agent.

"'Apr. 14, 1932. I hand you herewith the quit-claim deed mentioned above, and agree to the above instructions.

"'NELLIE C. CLIFFORD

"'By D. V. MULHERN, Her Attorney.'

"The $500 was placed in escrow by Palmer, and the quitclaim deed by Nellie Clifford and extension of time to make proof were also so deposited, but the General Land Office never accepted the deed as a transfer of title, nor was possession of the land given to defendant. Shortly thereafter, defendant notified Woodruff

that on account of her financial situation it was necessary to cancel the whole deal. This information was communicated to Palmer and by him to plaintiff, and shortly thereafter Palmer returned to Woodruff all papers which he had, and, so far as defendant was concerned, nothing more was ever done by her in furtherance of the matter. Thereafter this suit was brought.''

■■ The trial court concluded from the foregoing that the plaintiffs should recover the purchase price of the land covered by desert land entry No. 060553 and rendered judgment to that effect but that order was reversed by this court on appeal upon the ground that one of the three conditions precedent, which the escrow agreement provided should be complied with before the escrow holder was authorized to pay Nellie C. Clifford the purchase price, was never fulfilled. The other two were; that is, first, Nellie C. Clifford's quitclaim deed conveying the entry to the defendant was delivered to the escrow holder, and, second, an extension of three years' time in which to make final proof thereon was obtained from the United States General Land Office; but the third condition was never complied with; that is, the quitclaim deed was never accepted by the General Land Office as a complete transfer to the defendant of plaintiffs' entry. This means that title to the entry never passed to the defendant, for, as pointed out in that opinion, the general rule is that an action to recover the purchase price will not lie where title has not passed, and if this be true, much more will it be so

''where it cannot pass, without the doing of some further act, whose performance equity cannot and will not compel. In order that condition (c) may be fulfilled, there must be a showing to the General Land Office that defendant is a *bona fide* resident of Arizona. This showing cannot be made without a change of residence on the part of defendant, and it is repugnant to every known principle of law or equity to hold

that a party can be compelled to change his residence merely to aid in the performance of a contract."

After considering the allegations of the complaint and the record in the former case, the court sustained the demurrer without leave to amend, upon the ground that it did not state a cause of action for the reason that,

"The minds of the parties never met, in that both were laboring under a mutual mistake of fact to-wit: that Defendant White was legally qualified to make Desert Entry in Arizona there is therefore no agreement either express or implied that Martha R. White would change her residence in order to secure acceptance of the General Land Office of the transfer of said desert land entry to her."

Some days later the plaintiffs sought by motion permission to amend their complaint by supplementing it with allegations stating that defendant repudiated her contract of purchase because of double taxation and the state of the security market but that she later adopted as her reason that she was not a resident of Arizona as required by the United States Desert Land Laws; that the plaintiffs had no knowledge, as to her residence or non-residence in Arizona when the contract was entered into or repudiated by her; that her residence was a matter wholly within her control and beyond theirs; that when she entered into the contract she knew that to perform its covenants it was necessary that she be a resident of Arizona when the quitclaim deed was presented to the United States General Land Office, and that she fully contemplated being such resident; that, as plaintiff is informed and believes, she could instantly and without effort have become such resident any time prior or subsequent to entering into the written contract. The court denied the motion and judgment in favor of the defendant followed, hence this appeal.

■ In attacking the judgment plaintiffs have assigned nine errors but they discuss them under five propositions of law. It will not be necessary, as we view the matter, to consider these separately but only as they affect the question which, in our opinion, is determinative of the appeal. After this court held that the former action, brought to recover the purchase price of the entry in question, could not be maintained because title thereto never passed to the defendant, for the reason that the General Land Office never accepted the quitclaim deed as a complete transfer of the entry from Nellie C. Clifford to the defendant, plaintiffs filed this action to recover damages for a breach of that contract. They did this upon the theory that the two actions are different, one being based upon the affirmance of the contract and the other upon the acceptance of a breach thereof, and it is clear that they are not merely different but in fact inconsistent, though it is equally clear that both of them assume the existence of a contract, the former at the time the action was filed and the latter prior to its breach. Hence, if the purchase price was not recoverable because the contract by which plaintiffs agreed to sell and defendant to buy never became effective, damages for a breach of that contract would not be either. As long as there was no completed contract, and there could have been none under the agreement until plaintiffs' quitclaim deed had been accepted by the General Land Office as a complete transfer of the entry, there was nothing to breach, and clearly an action for damages for repudiating something that never had life could have no different or surer foundation upon which to rest than one to recover the purchase price had.

■ Plaintiffs seem to be of the view, however, that the agreement was completed to such an extent that it could be breached, even though specific perform-

ance of it could not be compelled, and in support of this proposition they call attention to the language of the Restatement of the Law of Contracts, paragraph 358 (e) page 635, that "a judgment for damages will be given in many cases in which a decree for specific performance is not available." There is no question as to the correctness of this statement, but it is not authority for the proposition that an agreement to buy property is breached by the buyer when he refuses to pay the purchase price because the seller cannot furnish title. One is not required to pay the consideration for property unless he can get title. If the General Land Office had accepted the quitclaim deed as a complete transfer and defendant had then refused to pay the purchase price, an action therefor, or one for damages for a breach, could have been maintained.

▆ Under the agreement it was, it is true, the duty of the defendant to deposit with the escrow holder the balance of the purchase price, $7,500, within thirty days from the time the quitclaim deed was deposited with it but this was not done, and the plaintiffs, knowing that the deed had not been accepted by the General Land Office as a complete transfer of the entry as required by the agreement, sought to overcome this by alleging that acceptance was prevented by defendant's failure to deposit the $7,500 with the escrow holder. It is not apparent how this could be true. The agreement does not make acceptance by the land office dependent in any way upon the fact that the money is deposited with the escrow holder but does provide that the latter shall pay the $8,000 deposited with it to Nellie C. Clifford when, among other things, the quitclaim deed has been accepted by that office as a complete transfer. Even if the $7,500 had been deposited with the escrow holder within the thirty days, it could not have been paid to the plaintiffs· prior to

action by the General Land Office, so in passing upon the sufficiency of the quitclaim deed as a transfer it was of no concern whatever to the General Land Office whether the purchase price was then in the hands of the escrow holder or still in the possession of the defendant. Regardless of who held it, the plaintiffs' right of action would have accrued upon acceptance by that office of the quitclaim deed as a transfer, and not until then. Hence, before the complaint may be said to state a cause of action, either for the purchase price or damages for its breach, it is necessary that it allege acceptance by the General Land Office of the quitclaim deed as a transfer of the entry. There was under the agreement, no other way by which the defendant could know she had title.

■■ After the court had sustained the demurrer the plaintiffs sought permission to amend the complaint by setting up certain facts relative to defendant's residence in Arizona at the time she entered into the contract. In substance the amendment was that the plaintiffs had no knowledge whatever of defendant's Arizona residence but that she knew when she entered into the agreement that to perform its covenants it would be necessary that she be a resident of this state when the quitclaim deed was presented to the General Land Office, that she contemplated being such resident and could have become one instantly and without effort any time prior or subsequent to entering into the contract. It would seem perfectly plain that these allegations could not have supplied the deficiency resulting from the failure to allege an acceptance of the deed by the General Land Office, since such an averment was absolutely essential under the contract to the statement of a good cause of action for a breach. The agreement authorized the escrow holder to pay plaintiffs the purchase price upon acceptance of the deed by the Land Office and not otherwise, and since

that action was not taken the duty to pay never arose, and it is immaterial why that office declined to accept the deed, whether doubt as to defendant's residence or something else guided it. Even if the defendant was a resident of Arizona when she signed the contract, but decided later she would not carry it out and by some word or act misled the proper officials of the Land Office as to her Arizona residence, averments of these facts would add nothing to a complaint asking damages for a breach. All it is necessary to allege in such an action is the agreement, performance by the plaintiff so far as possible, repudiation by the defendant, and the damages suffered as a result of refusal.

 If, instead of filing an action for a breach, plaintiffs had sought damages for deceit, that is for defendant's fraudulently representing to them that she was a resident of Arizona and could take title under the desert land law, when neither was true, the question of her residence would perhaps have been important, but in a suit for a breach of the contract it is immaterial. In proceeding as they did, however, plaintiffs suggest that they followed the statement in the former opinion that the court did not then need to decide

"Whether a suit could have been sustained upon the theory that defendant had fraudulently represented to plaintiff that she could take title, and that since she cannot she has therefore breached her contract, and is responsible in damages therefor."

It would seem to be plain that the court meant by this merely that it was not proper for it to determine whether plaintiff could have maintained an action on the theory that defendant had fraudulently represented to them that she could take title, and that since she could not, she was responsible in damages for her misrepresentation in that respect. Clearly she could

not have been responsible for breaching an agreement that did not then exist, and no statement she may have made beforehand to induce plaintiffs to enter into the contract, even though false and fraudulent, could have been material in a breach action. Contracts are breached by what occurs after they are entered into, not by anything that is said or done to bring them about.

In ruling on the demurrer the court took judicial notice of the former action and it was not merely its privilege but its duty to do this in view of the fact that that action was between the same parties, involved the same facts, and was heard in the same court, the only difference between them being that the first sought the purchase price of the entry and this one damages for a breach of the contract to buy it. *Stewart* v. *Phoenix National Bank, supra.* In reaching its conclusion that the complaint did not state a cause of action, the court considered the full record in that case and held that there was a mutual mistake of fact, namely, that defendant was legally qualified to make a desert entry in Arizona. However, it was not necessary that the court go further into the former record than to ascertain a little more clearly than the allegations in this complaint disclose that the agreement authorized the escrow holder to pay the $8,000 to plaintiff only when the Land Office had accepted the quitclaim deed as a transfer of the entry. Until this had been done no cause of action for a breach could be stated.

The judgment is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.